UNITED STATES DISTRICT COURT
DITRICT OF MASSACHUSETTS

| | |
|---|---|
| K.C. by and through Jeanne C.,<br><br>Plaintiffs<br><br>V.<br><br>GAINWELL TECHNOLOGIES AND GAINWELL TECHNOLOGIES HEALTH AND WELFARE PLAN,<br><br>Defendants | CIVIL ACTION NO. |

## **COMPLAINT**

### INTRODUCTION

1. Plaintiffs K.C. and Jeanne C. ("Plaintiffs") bring this action against Gainwell Technologies ("Gainwell") and the Gainwell Technologies Health and Welfare Plan ("Plan") (collectively referred to as "Defendants"), for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). K.C. is a participant in the Plan, an ERISA welfare benefit plan, whose claims administration are handled by Quantum Health and CareFirst Administrators, an independent licensee of the Blue Cross and Blue Shield Association. Gainwell is the Plan administrator of the Plan. Gainwell also self-funds the Plan.

2. This Complaint challenges the Defendants': 1) failure to disclose all relevant documents utilized in its decision to limit K.C.'s benefits as required by ERISA; 2) failure to provide K.C. with a full and fair review of K.C.'s claim; and 3) failure to provide a reasonable claims procedure that would yield a decision on the merits of K.C.'s claim.

3. The Plaintiffs are filing this action to obtain the documents required to permit K.C. to perfect

his appeal of Defendants' erroneous decision to limit his benefits, to enforce his rights under the Plan and under ERISA, to clarify his rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5. K.C. resides in Massachusetts. At the time of his treatment, which is the subject of this Complaint, K.C. was a minor, covered under the Plan.

6. Jeanne C. is K.C.'s mother. Jeanne C. lives in Massachusetts and was an employee of Gainwell at the time of the claims at issue in this matter.

7. The defendant, Gainwell Technologies, is a for-profit corporation with its principal place of business in Phoenix, Arizona. Gainwell is the Plan administrator and is responsible for paying claims processed and approved under the terms of the Plan.

8. The defendant, Gainwell Technologies Health and Welfare Plan, is a for-profit corporation, with its principal place of business in Phoenix, Arizona.

9. The Plan under which Plaintiffs are suing is a health insurance plan defined by ERISA, 29 U.S.C.§1002(1).

10. At all times relevant to the claims asserted in this Complaint, Gainwell purported to act as ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Plaintiffs, within the meaning of ERISA.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

11. As a Plan beneficiary, K.C. is entitled to health insurance benefits, under a contract of insurance issued and insured by Gainwell.

12. Under the terms of the Plan, Gainwell has discretionary authority to determine a claimant's eligibility for health insurance benefits and to interpret the terms and provisions of the Plan.

13. The Plan provides coverage for mental health treatment.

14. The Plan denied K.C.'s claims for mental health treatment.

### K.C.'s Claim for Benefits

15. In 2021, K.C. required mental health treatment, including residential treatment, as offered under the terms of the Plan.

16. The Plan provides coverage for mental health treatment, noting:

    **Mental Health and Substance Use Disorder Services** – Benefits are available for inpatient and outpatient care for mental health conditions and substance use disorders, including:
    - Individual, family, and group therapy;
    - Psychiatric tests;
    - Detoxification;
    - Residential treatment facilities;
    - Partial hospitalization;
    - Intensive outpatient services; and
    - Other services related to the diagnosis.

17. The Plan defines residential treatment as follows:

    **Residential Treatment Facility** - A facility licensed or certified by the jurisdiction in which it is located to operate a program for the treatment and care of Participants diagnosed with alcohol, drug, or substance use disorders or mental health conditions.

18. On December 9, 2021, Defendants denied K.C.'s claim for residential treatment services.

19. The December 9, 2021 letter, authored by Quantum Health on Gainwell and "MyQHealth by Quantum Health" letterhead, failed to cite the Plan provisions under which the denial was

3

based, referring the Plaintiffs instead to "page 101 of the plan document."

20. The December 9, 2021 letter failed to explain why the requested treatment was denied or the information relied upon by Quantum and Gainwell in rendering its adverse benefit decision.

21. The December 9, 2021 adverse determination letter also failed to include "a statement describing the availability, upon request, of the diagnosis and treatment codes and their corresponding meanings," and "the denial code and its corresponding meaning, as well as a description of the Plan's standard, if any, that was used in denying the claim," as required by the terms of the Plan.

22. The December 9, 2021 adverse determination letter also failed to "disclose the availability of, and contact information for, any applicable office of health insurance consumer assistance or ombudsman established under PHSA section 2793 to assist individuals with internal claims and appeals and external review processes."

23. The December 9, 2021 adverse determination letter failed to meet the terms of the Plan or ERISA.

24. On January 6, 2022, Defendants denied a different claim for residential treatment, which was medically necessary to treat K.C.'s mental health condition.

25. The January 6, 2022 adverse determination letter, while noting that the requested treatment was not medically necessary, failed to explain why the requested treatment was not medically necessary or the information relied upon by Quantum and Gainwell in rendering its adverse benefit decision.

26. The January 6, 2022 letter failed to include the relevant Plan language upon which Quantum and Gainwell relied to deny coverage, claiming that the relevant Plan provision could be found on page 77 of the Plan document.

27. Page 77 of the Plan document includes definitions of several terms beginning with "Hair

Loss" and concluding with "Personal Hygiene." Page 77 of the Plan also includes a definition for "Not Medically Necessary or Recommended."

28. The definition of "Not Medically Necessary or Recommended" includes two provisions: "Services or supplies that are determined not to be medically necessary for the medical care, diagnosis, or treatment of an injury or illness; or charges for any service, treatment, or supply not recommended by a physician."

29. The January 6, 2022 letter does not detail which provision K.C.'s recommended treatment failed to meet.

30. The January 6, 2022 adverse determination letter failed to include "a statement describing the availability, upon request, of the diagnosis and treatment codes and their corresponding meanings," and "the denial code and its corresponding meaning, as well as a description of the Plan's standard, if any, that was used in denying the claim," as required by the terms of the Plan.

31. The January 6, 2022 adverse determination letter also failed to "disclose the availability of, and contact information for, any applicable office of health insurance consumer assistance or ombudsman established under PHSA section 2793 to assist individuals with internal claims and appeals and external review processes."

32. The January 6, 2022 adverse determination letter failed to meet the terms of the Plan or ERISA.

**Request for Information**

33. The December 9, 2021 and January 6, 2022 denial letters promised access to the following information as required by ERISA:

> Clinical rationale used to make the non-certification determination will be provided in writing upon your request. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the determination. If you would like this

information, or if your attending physician has additional information or would like a peer-to-peer review, please contact me at . . ." (collectively referred to as the "Claim File").

34. On May 16, 2022, counsel for the Plaintiffs requested a copy of each of K.C.'s Claim Files. The letter informed Defendants of the documents requested, and its legal obligations under ERISA. The letter further informed Defendants that failure to provide the requested documents within thirty (30) days may result in a penalty of $110 per day pursuant to ERISA's implementing regulations.

35. In their May 16, 2022 letter, Plaintiffs also requested the following documents under the Mental Health Parity and Addiction Equity Act ("MHPAEA") and ERISA from Quantum:

- The specific plan language regarding the limitation and identify all of the medical/surgical and mental health and substance use disorder benefits to which it applies in the relevant benefit classification;
- The factors used in the development of the limitation and the evidentiary standards used to evaluate the factors;
- The methods and analysis used in the development of the limitation; and
- Any evidence to establish that the limitation is applied no more stringently, as written and in operation, to mental health and substance use disorder benefits than to medical and surgical benefits.

36. On June 16, 2022, Quantum responded to Plaintiffs' request for a copy of K.C.'s Claim File relating to its January 6, 2022 denial.

37. On November 30, 2022, over 6 months after Plaintiffs' initial request, Quantum responded to Plaintiffs' request for a copy of K.C.'s Claim File relating to its December 9, 2021 denial.

38. The Claim Files disclosed by Quantum failed to include any guidelines required by the MHPAEA.

39. Despite several subsequent communications seeking Defendants' guidelines demonstrating the Plan's compliance with the MHPAEA, Defendants have failed to disclose this information.

40. Without this information, Plaintiffs are unable to perfect their appeal of the decisions to deny

K.C.'s medically necessary mental health treatment denied by Defendants.

**ERISA's Disclosure Requirements**

41. Administrators have an obligation to provide information to Plan participants and beneficiaries. This obligation includes a duty to respond to written requests for information about employee benefits and the documents relevant to a claim for benefits. Plan participants and beneficiaries have a cause of action if administrators fail to provide the requested information.

42. Specifically, 29 U.S.C. § 1132(c) provides for penalties for an administrator's refusal to supply required information. Specifically, 29 U.S.C. § 1132(c) indicates:

    (1)   *Any* administrator….[who fails to provide certain information]

        (B) who fails or refuses to comply with a request for any information which such administrator is ***required by this subchapter to furnish*** to ***a participant or beneficiary*** (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

43. The penalty is due to be paid by any administrator who fails or refuses to comply with a request for information "which such administrator is required by this subchapter to furnish to a participant or beneficiary."

44. This penalty applies to the failure to provide the documents relevant to the Plan: "(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal

7

report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence. 29 U.S.C. §1024(b)(4).

45. In addition to the summary plan descriptions and other documents under which the plan is operated, 29 U.S.C. §1029 provides that the Secretary of Labor may also prescribe what other documents should be furnished:

> (c) Format and content of summary plan description, annual report, etc., required to be furnished to plan participants and beneficiaries. The Secretary may prescribe the format and content of the summary plan description, the summary of the annual report described in section 1024(b)(3) of this title and ***any other report, statements or documents*** (other than the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated), ***which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan.***

[emphasis added]

46. Pursuant to §109(c) and 502(c) together, the Secretary is given authority to establish the format and content of what documents are required to be produced "by this subchapter." Therefore, "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to . . .may in the court's discretion be personally liable" for a § 502(c) penalty.

47. Also, the Secretary has general authority under "this subchapter" to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this title. 29 U.S.C. § 1135.

48. The Secretary of Labor's ERISA claim procedures regulations, set out in 29 C.F.R. § 2560.503-1(h)(2)(iii) describe the documents an administrator must disclose upon written request.

8

49. The regulations state that, to provide a full and fair review, a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

50. Whether a document, record, or other information is relevant to a claim for benefits is determined by reference to 29 C.F.R. § 2560.503-1 (m)(8).

51. The Secretary explained at 29 C.F.R. § 2560.503-1 (m)(8) that the following documents are relevant to the claim, and are thus required to be produced under ERISA:

> (8) A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

52. Defendants had an obligation to provide all the documents relevant to a claim that are required to be provided by the Department of Labor's ERISA claims regulations.

53. Defendants, as the Plan administrator and Plan, were in possession of all the documents requested by K.C. Moreover, Defendants were the only entities with any obligation to provide the documents who were also in possession of the documents requested.

54. To date, Defendants have failed to respond completely to K.C.'s request for these documents.

55. The Defendants' failure to respond to K.C.'s requests have prohibited K.C. from properly determining his rights under the Plan and from exhausting his administrative remedies under

ERISA.

56. The Plan incorporates ERISA's disclosure requirements, ensuring access to the following information in the event of an adverse benefit determination:

> A Claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits. For purposes of this chapter, such information will be considered "relevant" if it:
>
> (i) Was relied on in making the benefit determination;
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied on in making the benefit determination;
> (iii) Demonstrates compliance with the Plan's administrative processes and consistency safeguards required in making the benefit determination; or
> (iv) Constitutes a statement of policy or guidance with respect to the Plan concerning the denied treatment option or benefit for the Claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination . . .
>
> If an internal rule, guideline, protocol or other similar criterion was relied upon in making the Adverse Benefit Determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the Adverse Benefit Determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the Claimant upon request.

57. The Plan also promises that participants may:

> Obtain, upon written request to the plan administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated Plan Document and Summary Plan Description. The Administrator may make a reasonable charge for the copies .

58. The Plan further promises:

> If your claim for a welfare benefit under the Plan is denied in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest summary annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110

a day (indexed) until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits, which is denied or ignored in whole or in part and you have exhausted your appeal rights, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who will pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds that your claim is frivolous.

**The Mental Health Parity and Addiction Equity Act**

59. The MHPAEA requires that both fully insured and self-insured large group health plans that cover mental health and substance use disorder benefits do so in a way that is no more restrictive than for physical health (i.e., medical/surgical) benefits.

60. Gainwell did not opt out of the requirements of the MHPAEA.

61. 29 C.F.R. § 2590.712(d)(3) requires plans subject to the MHPAEA to disclose the following information upon request:

> **(3)** *Provisions of other law.* Compliance with the disclosure requirements in paragraphs (d)(1) and (d)(2) of this section is not determinative of compliance with any other provision of applicable Federal or State law. **In particular, in addition to those disclosure requirements, provisions of other applicable law require disclosure of information relevant to medical/surgical, mental health, and substance use disorder benefits.** For example, ERISA section 104 and § 2520.104b-1 of this chapter provide that, for plans subject to ERISA, instruments under which the plan is established or operated must generally be furnished to plan participants within 30 days of request. **Instruments under which the plan is established or operated include documents with information on medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits, as well as the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan.** In addition, §§ 2560.503-1 and 2590.715-2719 of this chapter set forth rules regarding claims and appeals, including the right of claimants (or their authorized representative) upon appeal of an adverse benefit determination (or a final internal adverse benefit determination) to be provided upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the

claimant's claim for benefits. **This includes documents with information on medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits, as well as the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan**.

(Emphasis added).

62. Under 29 C.F.R. § 2590.712(d)(3), Defendants were required to provide Plaintiffs with "instruments under which the plan is established or operated" within 30 days of Plaintiffs' request.

63. Despite repeated requests, Defendants have failed to disclose the documents required by 29 C.F.R. § 2590.712(d)(3).

64. Defendants have not maintained that the above information is not required to be disclosed under ERISA and the MHPAEA.

65. Without this information, Plaintiffs are unable "to make informed decisions about how to best protect their rights.'" *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994).

## FIRST CAUSE OF ACTION

### (PENALTY AGAINST DEFENDANTS AS THE ADMINISTRATORS OF THE PLAN FOR FAILURE TO PROVIDE DOCUMENTS)

66. Plaintiffs reallege each of the paragraphs above as if fully set forth herein.

67. Under ERISA 29 U.S. Code § 1132 (a), "a civil action may be brought (1) by a participant or beneficiary (A) for relief provided for in subsection (c) of this section."

68. K.C. as a Plan participant and beneficiary has a right to enforce this obligation and seek redress of an administrator's violation.

69. Subsection (c) of 29 U.S.C. § 1132 notes that any administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary," shall be "in the court's discretion be

personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

70. Gainwell is both the Plan Administrator and Plan Sponsor of the Plan.

71. Gainwell both insures and administers the Plan and is responsible for ensuring compliance with ERISA.

72. Gainwell is the named fiduciary under the Plan.

73. 29 U.S.C. § 1132(c), the terms of the Plan, and Defendants own interpretation of ERISA's requirements and the Plan terms as articulated in its adverse determination letters require Gainwell to disclose K.C.'s Claim File to him within 30 days of a written request for information.

74. 400 days have passed since K.C. requested a copy of his Claim File. 370 days have passed since Defendants were required to disclose K.C. Claim File.

75. At $110 per day, Defendants should be penalized $40,700 for their failure to disclose K.C.'s Claim File pursuant to his written request.

76. Defendants' actions in failing to provide K.C. with a copy of the documents relevant to Defendants' adverse benefit decision and the Plan documents constitutes a violation of ERISA.

77. K.C. has been harmed by Defendants' failure to provide such documents. His ability to pursue his appeal of Defendants' adverse benefit decision has been negatively impacted by Defendants' failure to disclose a copy of K.C.'s Claim File and the Plan documents.

78. Defendants' disregard for ERISA's requirement that they disclose a copy of his Claim File in response to a denial of health insurance benefits mandates the application of the maximum penalty for the withholding of documents pursuant to ERISA.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### (ALL DEFENDANTS)

79. Plaintiffs reallege each of the paragraphs above as if fully set forth herein.

80. Defendants failed to provide K.C. with the information required by ERISA to pursue its unsupported adverse benefit decision.

81. As a direct, proximate, and foreseeable result of the Defendants' misconduct, K.C. has been injured and is entitled to equitable and other relief.

82. K.C. is entitled under 29 U.S.C. § 1132 to an order requiring the Defendants to provide him with the requested Plan documents.

83. K.C.'s pursuit of this matter benefits all members of the Plan, particularly those individuals unaware of ERISA's disclosure requirements, the timeframes for those disclosures, and how to effectively appeal an adverse benefit decision.

## THIRD CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

84. Plaintiffs reallege each of the paragraphs above as if fully set forth herein.

85. Under the standards applicable to ERISA, Plaintiffs deserve to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. §1132(g).

86. The Defendants have the ability to satisfy the award.

87. Plaintiffs conduct of this action is in the interests of all participants who subscribe to the Plan, particularly those whose benefits have been denied, and the relief granted hereunder will benefit all such participants.

88. The Defendants acted in bad faith in denying K.C.'s request for documents to which he is entitled under the Plan despite their promises to provide such information and the requirement to make such information available to Plan participants.

89. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully prays that the Court:

(1)    Declare, adjudge and decree that Defendants are required to disclose K.C.'s Claim File to K.C., without any redaction or withholding of documents.

(2)    Declare, adjudge and decree that the Defendants are required to pay K.C. the full amount of the statutory penalty under 29 U.S.C. § 1132(c)(1) as of the date the documents are disclosed to Plaintiffs.

(3)    Order that the Defendants make restitution to Plaintiffs in the amount of any losses sustained by Plaintiffs in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4)    Award Plaintiffs the costs of this action and reasonable attorneys' fees; and

(5)    Award such other relief as the court deems just and reasonable.

Dated: June 20, 2023                              Respectfully submitted for the Plaintiffs,


By:    _____
       Mala M. Rafik
       BBO No. 638075
       ROSENFELD & RAFIK, P.C.
       184 High Street, Suite 503
       Boston, MA 02110
       T: 617-723-7470
       F: 617-227-2843
       E: mmr@rosenfeld.com